[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-10959
Non-Argument Calendar
_____

D.C. Docket No. 1:12-cr-00232-CAP-LTW-3

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ROGELIO BENITEZ,
a.k.a. Roy,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(October 15, 2015)

Before HULL, WILLIAM PRYOR and ROSENBAUM, Circuit Judges.

PER CURIAM:

Rogelio Benitez appeals his convictions and sentence of 235 months of imprisonment for conspiring to possess with intent to distribute methamphetamine, 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 846, and conspiring to launder the proceeds of illegal drug trafficking activity, 18 U.S.C. § 1956(a)(1), (h). Benitez challenges the admission of testimony from Agent Michael Connolly of the Drug Enforcement Agency about code words used by Benitez and his coconspirators; the denial of his motion for a judgment of acquittal; and the amount of drugs attributed to him at sentencing. We affirm.

The district court did not abuse its discretion when it admitted Agent Connolly's testimony as lay testimony under Federal Rule of Evidence 701. Like the federal agent who testified about the meaning of code words in *United States v. Jayyousi*, 657 F.3d 1085, 1102–04 (11th Cir. 2011), Connolly's testimony was "rationally based on [his] perception"; helpful to the jury; and "not based on scientific, technical, or other specialized knowledge," as required in Rule 701. Connolly, the lead investigator of the conspiracy, testified that he interpreted the coded language used by Benitez and his coconspirators during telephone calls on April 2, 2011, and on April 21, 2011, by connecting particular phrases to specific actions that Connolly observed while surveilling the coconspirators. Connolly's interpretation of each conversation, which he accompanied with a description of and photographs showing the conspirators' ensuing activities, helped the jury to

2

understand that Benitez's and his coconspirators' use of particular numbers with the phrases "title to a truck" and "paint cans" related to the transfer of specific amounts of cash and methamphetamine. Connolly had experience investigating drug trafficking organizations, but he did not base his opinion on that experience. Connolly interpreted the coded language based on his review of wiretap summaries, transcripts, and the intercepted calls; intelligence he gathered about the drug conspiracy; and his personal observation of the conspirators' conduct. *See Tampa Bay Shipbuilding & Repair Co. v. Cedar Shipping Co.*, 320 F.3d 1213, 1221 (11th Cir. 2003); *United States v. Novaton*, 271 F.3d 968, 1008–09 (11th Cir. 2001). Connolly's testimony constituted a lay opinion admissible under Rule 701.

Substantial evidence supports Benitez's convictions. We review this issue for a manifest miscarriage of justice because Benitez failed to renew his motion for a judgment of acquittal at the conclusion of the evidence. *See United States v. House*, 684 F.3d 1173, 1196 (11th Cir. 2012). Viewed in the light most favorable to the prosecution, evidence of telephone calls between the conspirators, surveillance photographs, and testimony from Connolly, Agent Deverron Ramcheran, Agent Lamar Dyar, and a cooperating witness, Stephanie Espinoza, proved that Benitez conspired with Ivan Najero-Suazo, Domingo Najero-Suazo, and Alejandro Maldonado to distribute methamphetamine. *See* 21 U.S.C. § 846; *United States v. Isnadin*, 742 F.3d 1278, 1305 (11th Cir.), *cert. denied*, 135 S. Ct.

3

161, 233 (2014). Benitez identified himself as the "right hand man" to Ivan and as a "silent investor" in the trafficking operation; associated with Ivan and retrieved a bag from him thought to contain $30,000 in drug proceeds; agreed to provide Domingo 2 kilograms of methamphetamine and later retrieved the identical amount of the drug from Maldonado after he complained that it was unmarketable; assisted Domingo in purchasing a tractor-trailer truck to transport methamphetamine; helped Ivan and Domingo unload a shipment of what was thought to be methamphetamine that had been packed inside boxes of fresh tomatoes; and drove a Ford pickup truck that Ivan and Domingo used to store 25 kilograms of methamphetamine in Espinoza's garage and that contained a hidden compartment identical to one in a coconspirator's truck from which federal agents seized more than 9 kilograms of methamphetamine. Ample evidence also supported the jury's finding that Benitez conspired to launder the proceeds of the drug trafficking operation. *See* 18 U.S.C. § 1956(h); *United States v. Broughton*, 689 F.3d 1260, 1280–81 (11th Cir. 2012). The testimony of Agent James Cockrell, Officer Christopher Harrison, and Sergeant Charles Chapeau proved Benitez gave Angelica Chavarria, a currency courier for known brokers in Mexico, a duffle bag and suitcase inside which federal agents discovered $500,000 in cash. None of the evidence on any element of either conspiracy offense "is so tenuous that

4

[Benitez's] conviction[s] [are] shocking." *See House*, 684 F.3d at 1196 (quoting *United States v. Milkintas*, 470 F.3d 1339, 1343 (11th Cir. 2006)).

The district court did not clearly err in holding Benitez responsible for more than 22 kilograms of methamphetamine. The Sentencing Guidelines provide that a defendant is subject to a base offense level of 38 if he is responsible for 45 kilograms or more of methamphetamine and a base offense level of 36 if he is responsible for between 15 and 45 kilograms of the drug. United States Sentencing Guidelines Manual § 2D1.1(c)(1), (2) (Nov. 2014). Benitez's presentence investigation report held him responsible for 47.38 kilograms of methamphetamine, which included the 25 kilograms that federal agents seized from the truck in Espinoza's garage. But the district court found the evidence was insufficient to hold Benitez responsible for the 25 kilograms and determined that he had an offense level of 36 based on the 2 kilograms that he provided to Domingo and on the 20.383 kilograms equivalent to the $30,000 in drug proceeds that Benitez obtained from Maldonado and the $500,000 that Benitez gave to Chavarria. Benitez argues that there is insufficient evidence to connect the $500,000 to drug trafficking, but the district court was entitled to find that cash constituted drug proceeds based on its large amount, its delivery to Chavarria in the parking lot of a grocery store, Chavarria's departure in a taxi, her denial of knowledge about the bags when questioned by law enforcement, and the indication

5

of drug canines that the money smelled like narcotics. *See United States v. Ndiaye*, 434 F.3d 1270, 1305 (11th Cir. 2006) ("[T]he district court's choice between permissible views [of the evidence for purposes of sentencing] cannot be clear error."). Benitez also argues that he should not be held responsible for the $30,000, but even if we subtract its drug equivalent of 1.153 kilograms of methamphetamine, Benitez remains responsible for 22.38 kilograms of the drug. Based on that amount of methamphetamine, the district court correctly assigned Benitez a base offense level of 36. *See* U.S.S.G. § 2D1.1(c)(2).

We **AFFIRM** Benitez's convictions and sentence.